IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **ROLANDO MENEESE,**<br><br>Plaintiff,<br><br>v.<br><br>**ELECTRIC POWER BOARD OF METROPOLITAN NASHVILLE AND DAVIDSON COUNTY d/b/a NASHVILLE ELECTRIC SERVICE,**<br><br>Defendant. | No. _____<br><br>**JURY DEMAND** |

## COMPLAINT

For his Complaint under 42 U.S.C. §§ 1981 and 1983 against Defendant Electric Power Board of Metropolitan Nashville and Davidson County d/b/a Nashville Electric Service ("Defendant" or "NES"), Plaintiff Rolando Meneese ("Meneese" or "Plaintiff") states as follows:

### INTRODUCTION

1. Meneese brings this action to remedy NES's retaliatory termination of his employment. While working for NES, Plaintiff was subjected to racial discriminatory actions by his coworkers and supervisor. After Meneese complained to NES about the racially discriminatory treatment and had a meeting with his second-line supervisor and NES human resources ("HR") concerning his complaint, NES terminated his employment the next day. NES's termination of Plaintiff's employment violates §§ 1981 and 1983.

### JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. Plaintiff's claims arise under the laws of the United States, namely 42 U.S.C. §§ 1981 and 1983.

3. This Court has personal jurisdiction over NES. It is a quasi-governmental entity

doing business in this District.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b). A substantial part of the events giving rise to this action occurred within this District.

## PARTIES

5. Meneese is an individual; he resides in Davidson County, Tennessee.

6. NES is a municipally owned public utility provider that is managed by individuals appointed by the Mayor of Nashville, Tennessee.

7. NES may be served with process "by delivering a copy of the summons and of the complaint to any officer or managing agent thereof." Tenn. R. Civ. P. 4.04(9); *see also* Fed. R. Civ. P. 4(j)(2).

8. At all relevant times, 42 U.S.C. § 1983 applied to NES as a municipally owned public utility provider.

9. At all relevant times, 42 U.S.C. § 1981 applied to NES through § 1983.

## FACTS

10. Plaintiff is a mixed-race man who is part Black, and presents as Black.

11. Meneese began working for NES full-time as a Lineman Apprentice in approximately July 2024.

12. Prior to July 2024, Plaintiff worked for NES as an intern.

13. Meneese continued working for NES until the unlawful termination of his employment in approximately November 2024.

14. As an intern, Plaintiff received praise for his job performance.

15. Because of his strong job performance, NES invited Meneese to speak to high school students about the NES internship program.

16. When Plaintiff began working for NES full-time as a Lineman Apprentice, NES assigned him to the crew run by Cody Roberts ("Roberts"), a white man.

17. Roberts made derogatory comments about Meneese's race nearly every day.

18. Roberts would call Plaintiff names like "thug," "dumbass," and "worthless," which he did not do to crew members of other races.

19. Roberts asked Meneese if he had any "thug tattoos."

20. Roberts told Plaintiff that he should cut his dreadlocks off the top of his head.

21. Roberts also permitted other employees to make racially derogatory remarks about Meneese, including that the other team members could "talk to [Plaintiff] however the f*** they want."

22. The comments directed at Plaintiff—including but not limited to calling him a "thug," questioning whether he had "thug tattoos," and telling him to cut off his dreadlocks—invoked racial stereotypes associated with Black men. These remarks were racial in nature and were directed at Meneese because of Plaintiff's race.

23. Roberts did not use this language toward white employees.

24. Meneese regularly told one of his internship mentors at NES, Anthony Petway ("Petway"), a Black man, about the derogatory racial comments from Roberts and other members of his crew.

25. Plaintiff's complaints to Petway about the derogatory racial comments are protected activities under federal law.

26. Eventually, in November 2024, Petway requested a meeting on Meneese's behalf with Brandon Whitlock ("Whitlock"), Roberts's supervisor, to discuss the race discrimination.

27. On November 6, 2024, Plaintiff met with Petway, Whitlock, and a NES HR

employee.

28. The HR representative asked Meneese during the meeting what names he was being called and what was going on with his crew.

29. Plaintiff truthfully told all participants in the meeting about the discrimination that he was suffering from Roberts and the other crew members and that this differing treatment was based on his race.

30. During the meeting, Whitlock and the HR representative listened to Meneese's complaints without commenting on his statements and gave no response to his complaint of racial discrimination.

31. The next day after the meeting during which Plaintiff engaged in protected activities under federal law, on November 7, 2024, Whitlock fired Plaintiff for allegedly poor performance.

32. Meneese's prior evaluation at two months rated his as "Good," which meant fully meeting the requirements of his job.

33. Whitlock knew about Plaintiff's protected complaints of race discrimination and proceeded with terminating Meneese's employment anyway.

34. There was no legitimate reason to terminate Plaintiff's employment with NES.

35. NES terminated Plaintiff's employment because of his complaints about race discrimination that are protected under federal law.

# COUNT I
## Retaliation for Complaining about Race Discrimination
## 42 U.S.C. §§ 1981 and 1983

36. Plaintiff incorporates by reference all prior allegations in this Complaint.

37. Plaintiff is a member of a protected class under federal law, namely a mixed-race man who is part Black.

38. NES terminated Plaintiff's employment.

39. Meneese had an implied contract of employment with NES or, as an employee, had a contractual employment relationship within the meaning of § 1981.

40. Plaintiff made protected complaints of race discrimination while employed by NES, including but not limited to his complaints to Petway and his meeting with Petway, Whitlock, and the NES HR representative.

41. NES knew of Menesse's protected complaints of race discrimination.

42. Plaintiff's protected complaints of race discrimination were the but-for cause of NES's decision to terminate his employment.

43. NES's termination of Meneese's employment followed an official policy or policies that resulted in the violation of Plaintiff's rights under federal law.

44. Under NES's structure, Whitlock and/or NES's HR department had delegated, final authority to make the decision to terminate Plaintiff's employment.

45. Under NES's structure, Whitlock's and/or NES's HR department's decision to terminate Meneese's employment was final and unreviewable within NES.

46. Under NES's structure, Defendant adopted as its own official policy Whitlock's and/or NES's HR department's decision to terminate Plaintiff's employment.

47. NES ratified the decision to terminate Meneese's employment.

48. NES's HR department heard Plaintiff's protected complaints of race

discrimination; did nothing to investigate the complaints or to correct the racially discriminatory behavior; and then approved, acquiesced in, or ratified the decision to terminate Plaintiff's employment the next day.

49. NES has an unofficial policy of not correcting race discrimination and of retaliating against employees who complain about race discrimination, as elucidated in multiple lawsuits filed against NES in recent years for race discrimination and retaliation, including but not limited to *Gooch v. Electric Power Board of Nashville and Davidson County d/b/a Nashville Electric Service*, No. 3:20-cv-1001 (M.D. Tenn.).

50. As a direct and proximate result of NES's retaliatory termination of his employment, Meneese has suffered and continues to suffer damages, including but not limited to backpay, front pay, and compensatory damages.

51. Plaintiff is entitled to recovery of his attorneys' fees and costs.

## PRAYER FOR RELIEF

Based on the foregoing, Meneese prays for the following relief from this Court:

A. Awarding damages to Plaintiff for NES's retaliatory termination of his employment;

B. Requiring Defendant to pay all attorneys' fees that Meneese incurs to bring and to maintain this action;

C. Requiring NES to pay the costs and expenses of this action;

D. Requiring Defendant to pay any applicable pre-judgment and post-judgment interest; and

E. Granting Plaintiff such other, further, and general relief to which he may be entitled.

## JURY DEMAND

Plaintiff demands a jury trial.

Dated: November 3, 2025

Respectfully submitted,

/s/ *Charles P. Yezbak, III*
Charles P. Yezbak, III (TN #018965)
/s/ *Melody Fowler-Green*
Melody Fowler-Green (TN #023266)
/s/ *N. Chase Teeples*
N. Chase Teeples (TN #032400)
YEZBAK LAW OFFICES PLLC
P.O. Box 159033
Nashville, TN 37215
Tel.: (615) 250-2000
Fax: (615) 250-2020
yezbak@yezbaklaw.com
mel@yezbaklaw.com
teeples@yezbaklaw.com